Shane W. Tseng, SBN 200597
stseng@lkfirm.com
Justin C. Bentley, SBN 229685
jbentley@lkfirm.com
LAMB & KAWAKAMI LLP
333 South Grand Avenue, Suite 4200
Los Angeles, California 90071
Telephone: (213) 630-5500
Facsimile: (213) 630-5555

Attorneys for Plaintiff
NOISE GROUP, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOISE GROUP, LLC, a California limited liability company<br><br>Plaintiff,<br><br>vs.<br><br>THE GROWLERS, LLC, a California limited liability company; BROOKS NIELSEN, individually and dba The Growlers; MATT TAYLOR, individually and dba The Growlers; TOURNADO, INC., a California corporation; BEACH GOTH FESTIVAL, LLC, a California limited liability company; and DOES 1 through 20 inclusive,<br><br>Defendants. | CASE NO.:<br><br>PLAINTIFF NOISE GROUP, LLC'S COMPLAINT FOR:<br>1) FALSE DESIGNATION OF ORIGIN—§ 43(A) OF THE LANHAM ACT;<br>2) TRADEMARK INFRINGEMENT—§ 43(A) OF THE LANHAM ACT;<br>3) COMMON LAW TRADEMARK INFRINGEMENT;<br>4) UNFAIR COMPETITION – CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200; AND<br>5) DECLARATORY RELIEF<br><br>JURY DEMAND |

Plaintiff NOISE GROUP, LLC, a California limited liability company dba The Observatory ("Plaintiff" or "NOISE GROUP"), for its Complaint herein against THE GROWLERS, LLC, a California limited liability company; BROOKS NIELSEN, an individual dba The Growlers ("NIELSEN"); MATT TAYLOR, an individual dba The Growlers ("TAYLOR"); TOURNADO, INC., a California Corporation ("TOURNADO"); and BEACH GOTH FESTIVAL, LLC, a California limited liability company ("BEACH LLC") (hereinafter THE GROWLERS, LLC; NIELSEN; TAYLOR; TOURNADO and BEACH LLC are jointly referred to as "Defendants"), states as follows:

## PARTIES

1. Plaintiff NOISE GROUP is, and was at all times relevant herein, an entertainment services company that organizes and conducts music concerts and music festivals, with its headquarters and principal place of business in Seal Beach, California. NOISE GROUP also manufactures and sells merchandise, including but not limited to hats, headwear, t-shirts, sweat shirts, pins, stickers, and tote bags, related to its entertainment services.

2. THE GROWLERS, LLC is, upon information and belief, a company organized and existing under the laws of the State of California, which is doing business in the State of California, including but not limited to the Counties of Los Angeles and Orange.

3. NIELSEN is upon information and belief, an individual doing business under the fictitious name The Growlers.

4. TAYLOR is, upon information and belief, an individual doing business under the fictitious name The Growlers.

5. Upon information and belief, THE GROWLERS, LLC is a successor in interest and formally-organized corporate structure for the musical group known as The Growlers, which is NIELSEN and TAYLOR's fictitious business name

(THE GROWLERS, LLC, NIELSEN dba The Growlers, and TAYLOR dba The Growlers are jointly referred to herein as "THE GROWLERS").

6. TOURNADO is, upon information and belief, a corporation organized and existing under the laws of the State of California, which is doing business in the State of California, including but not limited to the Counties of Los Angeles and Orange.

7. BEACH LLC is, upon information and belief, a company organized and existing under the laws of the State of California, which is doing business in the State of California, including but not limited to the Counties of Los Angeles and Orange.

8. NOISE GROUP is unaware of the true names and capacities, whether individual, corporate or otherwise of Defendants Does 1 through 20 ("Doe Defendants"), inclusive, and therefore sues these Defendants by such fictitious names. NOISE GROUP will seek leave to amend this Complaint when the status and identity of these Doe Defendants are ascertained. The Doe Defendants include persons and entities assisting or acting in concert with the other Defendants in connection with the acts complained herein. All further references in this Complaint to "Defendant" or "Defendants" expressly include each fictitiously named Doe Defendant.

9. NOISE GROUP is informed and believes and thereon alleges that at all times herein mentioned and material hereto, some or all of said Defendants were the officers, directors, principals, agents, servants, employees and/or authorized representatives of some or each and every other Defendant, and each of them; and that, in doing the actions herein alleged or in not doing those acts herein alleged not to have been performed by omission, said Defendants were acting within the course and scope of such agency and/or authority.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over the claims pursuant to 28 U.S.C. the Lanham Act (15 U.S.C. §§ 1121, & 1125, *et seq*.) and pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a) & (b), and as the claims are so related that they form part of the same case or controversy under Article III of the United States Constitution and federal law, and arise out of common facts, transactions, or occurrences, as provided under Fed. R. Civ. P. 13 and 20. The Court also has supplemental jurisdiction over the related claims arising under California law, pursuant to 28 U.S.C. § 1367 (b) and (c).

11. Upon information and belief, this Court has personal jurisdiction over THE GROWLERS, LLC because it is incorporated under the laws of the State of California, its principal place of business is in California, and because it has harmed Plaintiff in California.

12. Upon information and belief, this Court has personal jurisdiction over NIELSEN, dba The Growlers, because he is an individual residing within the district and within the State of California, and is doing business within the district, and within the State of California, and because he harmed Plaintiff in California.

13. Upon information and belief, this Court has personal jurisdiction over TAYLOR, dba The Growlers, because he is an individual residing within the district and within the State of California, and is doing business within the district, and within the State of California, and because he harmed Plaintiff in California.

14. Upon information and belief, this Court has personal jurisdiction over TOURNADO because it is incorporated under the laws of the State of California, its principal place of business is in California, and because it has harmed Plaintiff in California.

15. This Court has personal jurisdiction over BEACH LLC because it is incorporated under the laws of the State of California, its principal place of business is in California, and because it has harmed Plaintiff in California.

16. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (c) because a substantial part of the events giving rise to the claims occurred in this District and THE GROWLERS, LLC, TOURNADO, and BEACH LLC's principal places of business are located in this District. Defendants have also engaged in continuous acts of trademark infringement and unfair competition within the State of California, including within this District, and have caused injury to NOISE GROUP in this District as a result of such conduct.

## GENERAL ALLEGATIONS

17. NOISE GROUP regularly organizes and conducts music concerts and music festivals held at several venues, including The Observatory, located at 3503 South Harbor Boulevard, in Santa Ana, California ("The Observatory").

18. In or around 2011 or early 2012, Jeffrey Shuman, an agent acting on behalf of NOISE GROUP, booked THE GROWLERS to play at The Observatory for two days in October 2012. Shortly thereafter, Mr. Shuman had the idea of expanding the booking into "something special" that would be more than a simple concert performed by THE GROWLERS.

19. Mr. Shuman had organized other festivals, and conceived of a festival to enhance THE GROWLERS' two-night booking into another NOISE GROUP festival that would include several other musical groups. If successful, Mr. Shuman and NOISE GROUP intended to turn the festival into an annual event.

20. Mr. Shuman was aware of the 2008 song entitled "Beach Goth," by a San Diego, California-based musical group named Wavves. He was also aware that the term "Beach Goth" had been used by music journalists and critics to describe a genre of music that Wavves, THE GROWLERS, and others performed. Although he was aware of the use of the term "Beach Goth" as a song title and as a genre of music, Mr. Shuman and NOISE GROUP were not aware that anyone had used the term "Beach Goth" in connection with a music festival. Mr. Shuman put together and curated a line-up of musical talent to play with THE GROWLERS for

the proposed festival that was complementary to the Beach Goth genre. He also devised the festival's name "Beach Goth Party."

21. In or around July 2012, after Mr. Shuman had conceived of and devised the festival, its line-up, and name, he informed THE GROWLERS' booking agent, Jared Flamm, and others of his plans for the festival, including branding the festival as "Beach Goth Party," and proposed that THE GROWLERS would headline the festival. Neither Mr. Shuman nor NOISE GROUP presented the festival to THE GROWLERS as a joint venture or other type of partnership. THE GROWLERS were paid to perform at the festival.

22. THE GROWLERS gave no feedback regarding the name of the festival or any other specifics, other than indicating that they preferred not to perform on the same booking with a few of the proposed acts and suggested certain other acts be considered to play. As is customary with festival planners, NOISE GROUP voluntarily accommodated THE GROWLERS' request in regard with a few of the proposed acts and also supplied THE GROWLERS some requested props.

23. During the time period between July 2012 and October 2012, NOISE GROUP began using the mark "Beach Goth Party" to advertise its festival, including using the mark in connection with pre-selling tickets for the festival. The mark has been used in advertising, promotional materials, and in other ways customary in the trade to identify Plaintiff as the source of the festival services. NOISE GROUP advanced or otherwise took care of *all* financial arrangements for Beach Goth Party. NOISE GROUP, its employees, agents, or others acting on its behalf, bore all potential liability for Beach Goth Party. NOISE GROUP, through its agent, Mr. Shuman, curated, arranged, negotiated, booked and paid all other musical acts for Beach Goth Party. NOISE GROUP expended considerable money for merchandizing and advertising Beach Goth Party. NOISE GROUP, its employees, agents, or others acting on its behalf rented or arranged for the sound

and lighting for the festival, obtained permits for Beach Goth Party, selected and arranged the venue, arranged for event security, stage hands, stage crew, ushers, hospitality, box office, tickets, and otherwise arranged all the logistics for Beach Goth Party.

24. None of the Defendants invested or otherwise put up any money for Beach Goth Party. None of the Defendants played any part in curating, arranging, booking, negotiating or paying any of the other musical talent. NOISE GROUP paid THE GROWLERS to perform at the festival as NOISE GROUP would normally compensate a musical act (*i.e.*, a fixed fee plus an additional amount if ticket sales met certain thresholds), and not as a partner. None of the Defendants shared in the profits of the festival or its liabilities and costs.

25. Beach Goth Party took place over two days in October 2012 inside The Observatory. The festival was consistent with, and similar to, other festivals developed and organized by NOISE GROUP.

26. The festival took place at the Observatory the next year, in 2013, using the same essential arrangements, using a shortened variation of the mark, namely "Beach Goth" followed by a numeral to identify how many years the festival had been held, and has done so since this time. The festival was promoted as "Beach Goth 2," to denote that it was the second annual "Beach Goth" festival. NOISE GROUP also used the marks "Beach Goth Festival" and "Beach Goth Fest" to promote the festival. NOISE GROUP again booked THE GROWLERS to headline, and curated and booked other musical talent, as it had done the prior year. Again, neither THE GROWLERS nor any other Defendant shared in the profits of the festival or its liabilities and costs of the festival. NOISE GROUP again paid THE GROWLERS to perform at the festival as NOISE GROUP would normally compensate a musical act, and not as a partner.

27. The festival moved to an outside location in the parking lot of The Observatory in 2014, and was promoted as "Beach Goth 3," "Beach Goth Festival"

and "Beach Goth Fest." In all other essentials, the festival remained the same, although the specific lineup of musical talent varied from year to year. NOISE GROUP again booked THE GROWLERS to headline, and curated and booked other musical talent, as it had done the prior year. Again, neither THE GROWLERS nor any other Defendant shared in the profits of the festival or its liabilities and costs of the festival. NOISE GROUP again paid THE GROWLERS to perform at the festival as NOISE GROUP would normally compensate a musical act, and not as a partner.

28. The festival also took place in 2015, and was promoted as "Beach Goth 4," "Beach Goth Festival" and "Beach Goth Fest." In all essential regards, the festival remained the same. NOISE GROUP again booked THE GROWLERS to headline, and curated and booked other musical talent, as it had done in prior years. Again, neither THE GROWLERS nor any other Defendant shared in the profits of the festival or its liabilities and costs of the festival. NOISE GROUP again paid THE GROWLERS to perform at the festival as NOISE GROUP would normally compensate a musical act, and not as a partner.

29. NOISE GROUP again planned to hold the festival in 2016 and planned on booking THE GROWLERS to headline, as in years past. However, during negotiations, THE GROWLERS asserted that they owned the festival and rights to the mark "Beach Goth" to promote a music festival. THE GROWLERS, through TOURNADO, demanded a substantial increase in payment and refused to play at what they claimed was their own festival if the hefty performance fee was not paid and other demands were not met.

30. Upon information and belief, individuals associated with THE GROWLERS applied for trademark protection for the mark "Beach Goth" Ser. No. 86206794 in 2014 but abandoned the application. This was done without NOISE GROUP's knowledge, permission, or consent.

31. NOISE GROUP has common law rights in the marks "Beach Goth Party," "Beach Goth," "Beach Goth Fest," and "Beach Goth Festival." NOISE GROUP has also applied for trademark protection of the marks "Beach Goth Fest," Ser. No. 87191830 and "Beach Goth Festival," Ser. No. 87191833. NOISE GROUP has also registered the domains BeachGothFest.com and BeachGothFestival.com, which it has used in connection with promoting the festival and selling tickets to the festival. Over the years, NOISE GROUP has spent a considerable amount of money advertising and promoting the mark in an effort to establish the mark in the minds of customers as a source of high quality and unique music festivals. Through NOISE GROUP's efforts to establish and promote its marks, NOISE GROUP's marks have acquired secondary meaning.

32. Upon information and belief, shortly before the festival was to take place in 2016, in or about September 2016, individuals associated with THE GROWLERS and TOURNADO formed Defendant BEACH GOTH FESTIVAL, LLC, whose name is confusingly similar to NOISE GROUP's marks. Defendants did so without NOISE GROUP's knowledge, consent or permission. Defendants also began asserting rights in the marks and variations on the marks. Defendants began using the mark, and marks that are confusingly similar to NOISE GROUP's marks, without the consent of Plaintiff in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation or approval of the services.

33. Upon information and belief, subsequent to NOISE GROUP's application for trademark protection, individuals associated with THE GROWLERS and TOURNADO applied for trademark protection of several marks that are confusingly similar to NOISE GROUP's marks "Beach Goth Fest" and "Beach Goth Festival," under the entity name and corporate structure of Defendant BEACH GOTH FESTIVAL, LLC. Upon information and belief, Defendants have no rights to the marks for which they have applied to protect. Upon information

and belief, the information provided by Defendants to the United States Patent and Trademark Office in applying for protection of the marks is inaccurate and untrue. Upon information and belief, Defendants have begun, or purported to have begun, using marks confusingly similar to Plaintiff's marks to promote THE GROWLERS' good and services, including music performance services without a written consent, an oral consent or a license from the Plaintiff. When Defendants applied for trademark protection, they knew of Plaintiff's rights to the marks.

34. NOISE GROUP, through its agents, have repeatedly requested orally and in writing that Defendants cease using marks similar to Plaintiff's marks to promote THE GROWLERS' goods and services.

## FIRST CLAIM

## (False Designation Of Origin Under Section 43(A) Of The Lanham Act)

35. Plaintiff realleges and incorporates herein the allegations of Paragraphs 1 through 34, inclusive.

36. This is an action for false designation of origin and unfair competition pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). This court has jurisdiction under 15 U.S.C. § 1121, 15 U.S.C. § 1125(a) and 28 U.S.C. §§ 1331 and 1338 (a). Venue is proper in this District under 28 U.S.C. § 1391.

37. On information and belief, Defendants have been using the mark Beach Goth and marks confusingly similar to Plaintiffs' marks to identify THE GROWLERS' music services, merchandise, apparel, and computerized on-line ordering services without a written consent, an oral consent or a license from the Plaintiff.

38. NOISE GROUP, through its agents, have repeatedly requested orally and in writing that Defendants cease using marks similar to Plaintiff's marks to promote THE GROWLERS' goods and services. To date Defendants are still using Plaintiff's marks, and marks confusingly similar to Plaintiff's marks to identify THE GROWLERS' goods and services.

39. Defendants' use of Plaintiff's marks and marks confusingly similar to Plaintiff's marks is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' services by Plaintiff.

40. Defendants' use of Plaintiff's marks and marks confusingly similar to Plaintiff's marks constitutes a false designation of origin which is likely to deceive and has deceived customers and prospective customers of the State of California and elsewhere throughout the United States into believing that Defendants' services are that of Plaintiff, and as a consequence, is likely to divert and has diverted customers away from Plaintiff.

41. Defendants' false designation of origin and acts of unfair competition have caused and are continuing to cause irreparable injury to the reputation, which Plaintiff has established over the years, and unless the use of the marks by Defendants is enjoined, Defendants will continue these acts to the detriment of Plaintiff.

## SECOND CLAIM
### (Trademark Infringement Under Section 43(A) Of The Lanham Act)

42. Plaintiff realleges and incorporates herein the allegations of Paragraphs 1 through 41, inclusive.

43. This is an action for trademark infringement pursuant to Section 43(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1). This court has jurisdiction under 15 U.S.C. § 1121, 15 U.S.C. § 1125(a) and 28 U.S.C. §§ 1331 and 1338 (a). Venue is proper in this District under 28 U.S.C. § 1391.

44. Plaintiff is in the business of organizing and conducting music concerts and music festivals.

45. Plaintiff has offered these services from various physical locations, including but not limited to The Observatory, since about 2011. Plaintiff also sells merchandise, including but not limited to hats, headwear, t-shirts, sweat shirts,

pins, stickers, and tote bags at the Observatory. Plaintiff offers tickets via retail stores and computer-based domains and websites, including but not limited to BeachGothFest.com and BeachGothFestival.com.

46. Plaintiff's marks, "Beach Goth Party," "Beach Goth," "Beach Goth Fest," and "Beach Goth Festival" are valid, protectable service marks in connection with promoting Plaintiff's music festival services. Plaintiff began using its mark "Beach Goth Party" on or before September 2012 to identify its above enumerated services. Plaintiff began using its marks "Beach Goth," "Beach Goth Fest," and "Beach Goth Festival" on or before September 2013 to identify its above enumerated services.

47. Plaintiff has used the marks in advertising, promotional materials, and in other ways customary in the trade to identify Plaintiff as the source of the festival services. NOISE GROUP has spent a considerable amount of money advertising and promoting the mark in an effort to establish the mark in the minds of customers as a source of high quality and unique music festivals.

48. Plaintiff owns "Beach Goth Party," "Beach Goth," "Beach Goth Fest," and "Beach Goth Festival" as service marks in connection with promoting Plaintiff's music festival services.

49. Defendants have used Plaintiff's marks and marks that are confusingly similar to Plaintiff's marks without the consent of Plaintiff in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation or approval of the services.

50. Plaintiff has been damaged by Defendants' use of its marks. Plaintiff will continue to be damaged by Defendants' use of confusingly similar marks, unless Defendants are enjoined from further use.

## THIRD CLAIM

## (Common Law Trademark Infringement)

51. Plaintiff realleges and incorporates herein the allegations of Paragraphs 1 through 50 inclusive.

52. This is an action for trademark infringement and arises under the common law. This cause of action is separate and independent of the cause of action set forth in the Second Claim, but is between the same parties and is based on the same operative facts as set forth in the Second Claim. The court has pendent jurisdiction over this Claim pursuant to 28 U.S.C. § 1338(b). Venue is proper in this District under 28 U.S.C. § 1391.

53. Plaintiff, as set forth in paragraphs 1 through 33 above, owns and uses the Beach Goth mark in various forms and styles in connection with its music festival services, retail goods services merchandise, including but not limited to hats, headwear, t-shirts, sweat shirts, pins, stickers, and tote bags at the Observatory, and in connection with sale of tickets via computer-based domains and websites, which have not been registered in the United States Patent and Trademark Office.

54. Plaintiff owns and enjoys common law rights in the State of California, and throughout the United States in and to the marks in connection with its music festival services, retail goods services, merchandise, including but not limited to hats, headwear, t-shirts, sweat shirts, pins, stickers, and tote bags at the Observatory, and in connection with sale of tickets via computer-based domains and websites in any form, style or like variation thereof with respect to music festival services and the sale of music festival services, retail goods services, and computerized on-line ticket ordering services and merchandise, including but not limited to hats, headwear, t-shirts, sweat shirts, pins, stickers, and tote bags.

55. The use of the Beach Goth mark in various forms and styles in connection with music festival services, computerized on-line ordering services

and merchandising, including but not limited to hats, headwear, t-shirts, sweat shirts, pins, stickers, and tote bags by Defendant in the State of California, Los Angeles and Orange Counties, and elsewhere throughout the United States is likely to cause and has caused confusion as to source of the services in that purchasers will be likely to associate or have associated such services with and as originating with the Defendants, all to the detriment of the Plaintiff.

## FOURTH CLAIM
### Unfair Business Practices (California Bus. & Prof. Code § 17200)

56. Plaintiff realleges and incorporates herein the allegations of Paragraphs 1 through 55, inclusive.

57. This is an action for Unfair Business Practices pursuant to California Business & Professions Code Section 17200, *et seq.*, and arises under California law. This cause of action is separate and independent of the cause of action set forth in the Second Claim, but is between the same parties and is based on the same operative facts as set forth in the Second Claim. The court has pendent jurisdiction over this Claim pursuant to 28 U.S.C. § 1338(b). Venue is proper in this District under 28 U.S.C. § 1391.

58. Defendants' conduct as alleged hereinabove, including without limitation, by using Plaintiff's marks, marks that are confusingly similar to Plaintiff's marks, asserting ownership rights in the festival, seeking to trade on the goodwill developed by Plaintiff in the marks and the festival, and otherwise seeking to improperly gain advantage of Plaintiff's investment in the festival, is fraudulent, deceptive, unfair and otherwise wrongful.

59. By reason of Defendants' fraudulent, deceptive, unfair, and other wrongful conduct as herein alleged, said Defendants have violated California Business and Professions Code Section 17200, *et seq.*, by consummating an unlawful, unfair, and fraudulent business practice, designed to deprive Plaintiff of

rights in the marks, ownership of the festival, and a return on the money Plaintiff has invested in developing the festival.

60. By reason of the foregoing, Plaintiff has suffered and continues to suffer damages in a sum which is, as yet unascertained. Plaintiff will ask leave of court to amend its complaint when the true nature and extent of its damages have been ascertained.

## FIFTH CLAIM

### (Declaratory Relief)

61. Plaintiff realleges and incorporates herein the allegations of Paragraphs 1 through 60, inclusive.

62. There is an actual and justiciable controversy between the parties regarding the alleged trademark infringement, and Defendants' application for trademark protection of trademarks that are confusingly similar to Plaintiff's marks.

63. Upon information and belief, Defendants have no rights in the trademarks for which Defendants have applied for protection with the United States Patent and Trademark Office.

64. By reason of the foregoing, Defendants' applications should be declared invalid, unenforceable, and should be canceled, or Defendants should be ordered to abandon their trademark applications.

65. Further, Defendant BEACH LLC should be ordered to change its name to a name that is not confusingly similar to Plaintiff's marks.

## PRAYER FOR RELIEF

WHEREFORE, NOISE GROUP asks the Court for the judgment as follows:

66. RELIEF AS TO THE FIRST, SECOND, AND THIRD CLAIMS

    a. Plaintiff be awarded damages in an amount according to proof.

67. RELIEF AS TO THE FIRST, SECOND AND FOURTH CLAIMS

    a. That Defendant and all others acting in concert with it be

directed to pay to the Plaintiff all costs and attorneys' fees connected with this action; 15 U.S.C. § 1117; Business & Professions Code § 17200.

  b. That Defendants and their agents, servants, employees, attorneys and all in active concert and/or participation with it be directed to account, disgorge and pay over to the Plaintiff all gains, profits and advantages by them and others acting with them from the sale of its music services and sale of merchandise and apparel under the Beach Goth Party, Beach Goth, Beach Goth Fest, and Beach Goth Festival marks or any other colorable imitation thereof.

68. RELIEF AS TO FIRST THROUGH THE FIFTH CLAIM

  a. That Defendants and their agents, servants, employees, attorneys and all in active concert and/or participation with it be restrained, through permanent injunctive relief, from using the marks Beach Goth Party, Beach Goth, Beach Goth Fest, and Beach Goth Festival, or any other colorable imitations thereof in connection with its music services and sale of merchandise and apparel.

  b. That Defendants and their agents, servants, employees, attorneys and all in active concert and/or participation with it be restrained, through permanent injunctive relief, from engaging in unfair competition or false designation of origin with the Plaintiff. 15 U.S.C. § 1116; Business & Professions Code § 17200.

  c. That the Plaintiff be given such other and further relief as the Court deems appropriate.

69. DECLARATORY RELIEF AS TO THE FIFTH CLAIM

  a. That Plaintiff has rights in the marks Beach Goth Party, Beach Goth, Beach Goth Fest, and Beach Goth Festival, and any other colorable imitations thereof in connection with its music services and sale of merchandise and apparel.

      b.    That this Court find that Defendants have improperly applied for trademark protection of marks that are confusingly similar to Plaintiff's marks, and that the Defendants' trademark applications should be invalidated;

      c.    Defendant BEACH LLC should be ordered to change its name to a name that is not confusingly similar to Plaintiff's marks.

DATED: November 7, 2016

Respectfully submitted,
LAMB & KAWAKAMI LLP

By: /s/ *Justin C. Bentley*
Shane W. Tseng
Justin C. Bentley
Attorneys for Plaintiff
NOISE GROUP, LLC

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, Plaintiff demands a jury trial on all claims which are triable to a jury in this action.

DATED: November 7, 2016

Respectfully submitted,
LAMB & KAWAKAMI LLP

By: /s/ *Justin C. Bentley*
    Shane W. Tseng
    Justin C. Bentley
    Attorneys for Plaintiff
    NOISE GROUP, LLC